23 C.C.P.A (Patents)

## In re KRAEUTER.

### Patent Appeal No. 3643.

Court of Customs and Patent Appeals.

June 8, 1936.

Thomas Howe, of New York City, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant, Arthur A. Kraeuter, made application to the United States Patent Office on February 4, 1932, for a patent on certain "improvements in golf club." The proposed improvement involves a golf club in which a steel shaft is fitted into a metallic hosel. Two forms of such a club are shown. The first form, which is applicable to a golf club of the ordinary form of putter, midiron, or other metal club, usually of steel, is made by so forming the end of the shaft that it will be tapered inward, and in this form it is inserted into an outwardly tapered hosel, the parts being so constructed that a close joint will be made when the shaft is pushed into place. Before the shaft is inserted in the hosel, both parts are thoroughly cleaned and polished so that there will be no foreign substance in the joint. A flux is then applied to the wall of the hosel socket, and also to the shaft which is to be entered within the socket. This flux is the well-known flux used in soldering operations, but is free from acid which would attack the joint. The end of the shaft is then dipped into a molten bath of soft solder, preferably an alloy of tin and lead in the proportions of 63 per cent. tin and 37 per cent. lead. The end of the shaft thus coated with the soft solder is then inserted into the hosel, which may also be coated with the same alloy. Thereafter, the joint is heated to a point where the alloy between the shaft and socket walls becomes fused. This fused material penetrates into all the crevices and openings, and fills the same. Thereupon the joint thus made is plunged into a cooling liquid and the solder then cools and hardens, making a homogeneous joint.

The other form shown by the applicant makes use of an adapter which is interposed between the end of the shaft and the taper of the hosel. Soft solder is used in this joint as in the other form, and the result is a solid joint, including the wall of the hosel, the adapter, and the shaft.

Attached to the application was an affidavit of one Joseph C. Brisick, a mechanical engineer and superintendent of the company which manufactures the clubs, the subject-matter of this application, and which affidavit discloses that the soldered connection has today largely superseded other forms of connections; that large numbers of clubs embodying applicant's invention have been sold; and that the joint described by applicant tends to produce a much better hitting club, and reduces the shock upon the hands of the player, more than the old and well-known rivet connection formerly used.

As to the patent to Mattern, No. 1,-550,647, hereinafter referred to, the af-

fiant stated that the process of brazing or welding used by Mattern required a temperature about three times as high as that of the soldering operation of the Kraeuter application, and that, as a result thereof, the preparation of such a joint would destroy the temper in the shaft and cause it to become soft and practically useless. Affiant also stated that the brazing or welding a sleeve or bushing between the hosel and the shaft, as done by Mattern, would not produce the solid and firm joint which is produced by Kraeuter's liquid solder.

Claims 1 and 17 are typical of all the rejected claims, twelve in number, and are as follows:

"1. In a golf club, the combination with a head having an iron hosel, of an iron shaft entering within and secured to said hosel, and a film of soft solder contacting and securing iron to iron in a joint between said hosel and shaft and filling in spaces of noncontact of the joined surfaces, said solder being fused in said joint and allowed to solidify.

"17. In a golf club, the combination with a metal head, of a tempered steel shaft secured to said head and a thin film of solder in a joint between said head and shaft of a lower fusing temperature than that at which said shaft is tempered, said solder being fused in the joint and allowed to solidify and constituting the sole securing means of its joint."

On the hearing in this court, the appellant moved to dismiss his appeal as to claim 2, and the motion is allowed.

The Examiner rejected all the claims in the case on reference to either Barnhart, 1,713,812, May 21, 1929, or Mattern, 1,550,647, August 18, 1925, or both.

On appeal, the Board of Appeals affirmed the rejection of the Examiner, and added the suggestion that the art was thoroughly familiar with the temperature at which soft solder melts, and that it would be obvious to use a soft solder in making the joint here involved. The Board ends its decision with this suggestion:

"* * * In any event, we think that it would occur to one to experiment with a solder which would not destroy the temper and we are in accord with the examiner that appellant's procedure was an obvious one and therefore unpatentable."

The Mattern reference shows a golf club with a steel shaft fitted into a metallic hosel by means of a bushing or adapter. The specification recites:

"* * * The bushing 4 is preferably of metal, brass being the usual material. In such case the parts are united by brazing or welding, so that the hosel, the insert bushing and the handle become integrally united. * * *"

The Barnhart patent discloses a metallic shaft with a tapered end inserted into an outwardly tapering hosel and fastened with a rivet.

It is argued by the appellant that the application, accomplishes several purposes; namely, that it prevents shock to the hands of the player, makes an integral joint, and gives resiliency to the joint. As to the Mattern reference, it is argued that a brazed joint, such as is shown by Mattern, makes it necessary to subject the club and its joint to a degree of heat which removes the temper from the metal in the shaft. As these shafts are very thin, composed of steel usually about 5/100 of an inch thick, it is evident that it would not require great shocks to slightly deform the same, and that a joint made of soft solder, being more yielding, would create less liability of deformation of the shaft of the club when heavy blows are struck with the ball head, in playing.

It is thought by the Board of Appeals that it would be obvious to the maker of golf clubs to use the proper kind of solder in making such connections, and that if soft solder were needed, the mechanic might, by experiment, readily ascertain what kind to use. The art, when appellant entered the field, used either a rivet or a hard, rigid, brazed connection which lacked the resilience which is occasioned by the use of a soft solder. It would, we believe, occur to one skilled in the art, that the use of a soft solder might make a weak joint, and one unable to withstand the stresses to which a golf club is ordinarily subjected. This inventor, however, discovered that such was not the case, and that instead of a weak joint it created a joint not only strong enough, but much more resilient and useful to the player.

As to the degrees of heat needed for the melting of hard and soft solder, we are referred by the appellant to the Eighth

Edition of Machinery's Handbook, wherein it appears that a much higher degree of heat is needed in hard soldering than in soft soldering. It would seem to be a great advantage in a golf club, if a means of connection could be made in which the material of the shaft and the hosel would not be damaged by the process of joining them together. This much, in addition to the features above mentioned, the appellant has done for the art, and we are unable to see, in any contribution made by the references Mattern and Barnhart, anything that anticipates the inventive idea.

It is true that the art is well acquainted with the character of brazing, welding, and soldering. It does not follow, however, that the art was conversant with the effects which would be produced in using a soft soldered connection between the shaft and head of a golf club.

We are constrained to differ with the Board of Appeals, and are of the opinion that the refused claims, with the exception of claim 2, should be allowed.

Our attention is called to In re Treuting, 76 F.(2d) 310, 22 C.C.P.A.(Patents) 1095. In that case, the appellant substituted for a tinning layer shown by some of the references an activated lead layer disclosed by another reference patent. We said, in that case, that although the appellant had made a better article commercially, it was not inventive, because he had simply combined features which were known to the art with no new and useful result. But such is not the case here. No one, so far as we are advised by the references, had ever used the solder used by appellant in the art of making golf clubs, until appellant discovered that the same would produce a new and useful result, although the art of soldering substances together had been known since time immemorial.

Claims 16 and 17 do not expressly claim the use of soft solder, but rely upon the element "solder * * * of a lower fusing temperature than that at which said shaft is tempered." Whether this language is unduly broad is not before us, as this was not given as a ground of rejection by the patent office tribunals.

The appeal is dismissed as to claim 2. In other respects, the decision of the Board of Appeals is reversed.

Reversed.